**IT IS ORDERED as set forth below:**



**Date: March 30, 2019**

_____

*Susan D. Barrett*

United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Dublin Division

| | | |
|---|---|---|
| IN RE:<br>SARALAND, LLLP | ) )<br>) | Chapter 7 Case<br>Number <u>12-30113</u> |
|      Debtor | )<br>) | |
| | ) | |
| UNITED STATES OF AMERICA FOR THE<br>USE OF LISTER HARRELL, SARALAND,<br>LLLP, AND PARADISE FARMS, INC. | )<br>)<br>) | |
| | ) | |
|      Plaintiff | )<br>) | Adversary Proceeding<br>Number <u>18-03002</u> |
| v. | )<br>) | |
| TODD BOUDREAUX, | )<br>) | |
|      First Defendant | )<br>) | |
| LIBERTY MUTUAL INSURANCE CO., | )<br>) | |
|      Second Defendant | )<br>) | |

AO 72A

(Rev. 8/82)

## OPINION AND ORDER

Before the Court are separate Motions to Dismiss filed by Todd Boudreaux ("Boudreaux") and Liberty Mutual Insurance Co. ("Liberty Mutual") (collectively "Defendants") seeking the dismissal of this adversary proceeding filed by the United States of America for the Use of Lister Harrell ("Mr. Harrell"), Saraland, LLLP ("Saraland"), and Paradise Farms, Inc. ("Paradise Farms") (collectively "Plaintiffs"). The Motions seek dismissal on the following main grounds: issue and claim preclusion; failure to state a claim; absolute and qualified immunity; lack of standing; statute of limitations; and failure to follow Federal Tort Claims Act procedure. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, the Motions to Dismiss are granted.

## FINDINGS OF FACT[1]

---

[1] This Court may take judicial notice of the pleadings on its own docket for purposes of this motion to dismiss. Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'")(citations

AO 72A

(Rev. 8/82)

The bankruptcy cases of Saraland, Paradise Farms, and Mr. Harrell have been pending for more than 6 years with many disputes and appeals. All three Plaintiffs initially filed chapter 11 bankruptcy petitions in March 2012. In the Saraland case, creditors Colony Bank, AgGeorgia Farm Credit, ACA ("AgGeorgia"), and F & W Forestry Services, Inc. filed a joint motion in 2012 seeking to convert the case to a chapter 7 or appoint a trustee. In re Saraland, Chapter 7 Case No. 12-30113,[2] Dckt. No. 105. The United States Trustee ("UST")[3] also sought to convert the Saraland, Paradise Farms, and Mr. Harrell bankruptcy cases to chapter 7. Dckt. No. 123. After a lengthy 2013 hearing, at which Mr. Harrell and counsel for all three debtors appear in opposition of the motions, the Court entered an order directing the appointment of a chapter 11 trustee of Saraland after evidence of: substantial and continuing loss to or diminution of the

---

omitted); see also Billingsea v. Graphic Packaging Int'l, Inc., 2013 WL 2156473, at *2 (M.D. Ga. May 17, 2013)(stating that because court documents are capable of accurate and ready determination, the court reviewed "documents filed in other judicial proceedings to recognize the subject matter of the litigation and issues decided without converting the motion to dismiss to a motion for summary judgment.").

[2] Unless indicated otherwise all Docket Numbers refer to the docket of the Saraland bankruptcy case number 12-30113.

[3] The same Assistant UST has been involved in these cases from the onset.

estate; the absence of a reasonable likelihood of rehabilitation; gross mismanagement including commingling of the funds; and Mr. Harrell's use of Saraland funds to pay for personal expenses, Paradise Farms' expenses, and other expenses.  Dckt. No. 150, p. 5.  The order and opinion found:

> Without Court or creditor approval, funds of Saraland have been commingled with and used to fund the [Paradise Farms] and [Mr. Harrell] cases . . . . Harrell testified and acknowledged, and the operating reports confirm, Saraland's funds also have been utilized to pay for Mr. Harrell's personal expenses as well as the expenses of Paradise.  While Mr. Harrell testified he has now changed Debtor's internal financial procedures to better safeguard against these events that does not rectify the damage already done under Mr. Harrell's management and control.  Furthermore, the recent operating reports continue to reflect expenses for automobiles Debtor does not own or did not disclose on its schedules as well as commissions being paid to contract laborers whose employment has never been approved and some payments to a purported insider, Sarah Harrell.  Furthermore, Mr. Harrell's testimony reflects a lack of understanding and competence in complying with chapter 11 procedures.  He stated he did not know if Saraland owned any vehicles, and Debtor's schedules do not reflect any vehicles, yet the operating reports show vehicle expenses being paid.  There also is confusion on whether debtor owned the 1973 Camaro and mobile home that was sold post-petition and the proceeds given to Mr. Peek, who is Mr. Harrell's personal attorney.  Mr. Harrell has used approximately $83,000.00 in cash to convert Saraland's timberland to irrigated cropland without secured creditor consent or Court approval.  In August, without prior Court approval, Saraland incurred debt in the amount of $8,000.00 with a loan from Mr. Harrell.  While no payments are being made to its creditors, Saraland has paid dividends to Mr. Harrell and paid for business travel and entertainment that did not benefit Saraland.

> Lastly, under Mr. Harrell's management, Saraland has not filed a plan of reorganization. The case was filed on March 29, 2012. The exclusivity period expired July 27, 2012 and no plan has been filed. Almost an entire year has passed without a plan being filed. See 11 U.S.C. §1112(b)(4)(J). Mr. Harrell has testified at various hearings on his ideas for Saraland; however, to date no plan has been filed with this Court.
>
> Each of these items constitute cause to convert, dismiss, or appoint a chapter 11 trustee, whichever is in the best interest of the estate and the creditors. 11 U.S.C. §1112(b)(4). Debtor has failed to show unusual circumstances exist that conversion or dismissal is not in the best interest of creditors and the estate, nor has Debtor established that a plan will be confirmed within a reasonable period of time. See 11 U.S.C. §1112(b)(2).

Dckt. No. 150, Order Granting Motion to Appoint Trustee, pp. 5-6. Pursuant to the terms of this order, the UST appointed Boudreaux as the trustee of Saraland. Dckt. No. 151. This order was not appealed. Dckt. No. 150. At the same time, the Court also converted Paradise Farms' and Mr. Harrell's individual bankruptcies to chapter 7 bankruptcy cases and Mr. James L. Drake, Jr. ("Mr. Drake") was appointed, and continues to serve, as the chapter 7 trustee in Mr. Harrell's and Paradise Farms' chapter 7 bankruptcy cases.[4]

After his appointment as trustee in the Saraland case, Boudreaux began filing motions for turnover, including one for a

---

[4] The respective case numbers are: In re Paradise Farms, Chap. 7 Case No. 12-30111 and In re Harrell, Chap. 7 Case No. 12-30112.

watch that was purportedly purchased with Saraland's funds.  See Dckt. Nos. 202 and 203.  He also filed adversary proceedings seeking to avoid purported fraudulent and preferential transfers. Adversary Proceeding Nos. 13-03004, 13-03005, and 13-03006.

Adversary Proceeding No. 13-03004 was filed by Boudreaux against LDH Associates, LLC. ("LDH")[5] seeking to avoid the transfer of some real property in Florida from Saraland to LDH for purportedly no consideration and for a finding that LDH's assets belong to Saraland as LDH is the alter ego of Saraland. Adversary Proceeding No. 13-03004, Dckt. No. 1.  No answer was filed by LDH and Default Judgment was entered after a hearing in which Mr. Harrell appeared and sought to set aside entry of default.  Id., Dckt. Nos. 39 and 40.  No appeal was taken as to the default judgment.

Adversary Proceeding No. 13-03005 was filed against Mr. Harrell, Nikki Harrell d/b/a Plantation Management and Plantation Management, Inc.[6] alleging that even after Boudreaux had demanded turnover of all Saraland's accounts, Mr. Harrell caused

---

[5] LDH is a limited liability corporation that was controlled by Mr. Harrell.

[6] According to the Complaint, Plantation Management is a Georgia limited liability company which was allegedly owned and controlled by Mr. Harrell and/or his daughter, Nikki Harrell.

electronic transfers from Saraland to Mr. Harrell and to his daughter, Nikki Harrell, and caused checks made payable to Saraland to be reissued to Mr. Harrell, personally or his daughter, Nikki Harrell, including a $12,000.00 check initially made payable to Saraland which was caused to be reissued to Nikki Harrell d/b/a Plantation Management, Inc.  Adversary Proceeding No. 13-03005, Dckt. No. 1.  This complaint also challenged the electronic transfer of over $26,000.00 to an online PayPal account for Lister's Outdoor World[7] from Saraland.  Id.  After notice and a hearing, a preliminary injunction was granted enjoining the defendants from: entering premises of Saraland without Boudreaux's permission; selling, transferring, hiding, or encumbering any assets of Saraland; interfering with harvesting of pine straw; and interfering with Boudreaux's right to possess, control, secure, and store property of Saraland or any assets located on the property of Saraland without further order of this Court.  Id., Dckt. No. 12.

Ultimately, no answer was filed, and default was entered.  In December 2014, Mr. Harrell alleged: Messrs. Drake and Boudreaux were guilty of gross mismanagement; Boudreaux had

---

[7] Lister's Outdoor World was another corporation owned and/or controlled by Mr. Harrell.

filed a false affidavit to obtain the temporary restraining order; the chapter 11 examiner's report was grossly inaccurate and unsubstantiated; and Boudreaux's status report filed May 31, 2013 in the Saraland case was a total fabrication wrongfully portraying Mr. Harrell as grossly mismanaging Saraland affairs.   Adversary Proceeding No. 13-03005, Dckt. Nos. 95 and 96.   A hearing was held in all three bankruptcy cases to consider Mr. Harrell's allegations and the Court denied the motion on several grounds stating, "There has been no evidence submitted to this Court or to the United States Trustee of any malfeasance, wrongdoing or mismanagement by either [Mr. Drake or Mr. Boudreaux].   The United States Trustee supports and concurs in the management and administration of the bankruptcy estates by the trustees."   Id., Dckt. No. 121.

Adversary Proceeding No. 13-03006 was filed against Oakley, Inc. and sought to avoid post-petition transfers from Saraland to Oakley, Inc.   Adversary Proceeding No. 13-03006, Dckt. No. 1.

While Boudreaux was the chapter 11 trustee of the Saraland bankruptcy case, Lister Harrell on behalf of himself, Paradise Farms, and Saraland filed numerous motions to remove Boudreaux as trustee.   First, in August 2013 Mr. Harrell alleged

Boudreaux and others had stolen personal property; lied to the Court; and committed crimes against Mr. Harrell, including colluding with Dodge County officers to have Mr. Harrell arrested. Dckt. No. 288. After notice and hearing at which Mr. Harrell attended, the Court denied his removal motion finding the allegations were unsubstantiated. Dckt. No. 323. Given the seriousness of the allegations, this order was entered "without prejudice" and was not appealed. Id.

Thereafter, Boudreaux sought approval to sell various tracts of land owned by Saraland.[8] At the request of Mr. Harrell, the Court postponed the hearing on the sale in order for Mr. Harrell to find a buyer willing to pay a higher price. Dckt. No. 363. In accordance with the established competitive bidding procedures, the auction was held October 28, 2013; and in November 2013, the Court approved the sale to Carter Clements, whom Mr. Harrell brought to the auction and to whom Mr. Harrell supported the sale. Dckt. Nos. 400, 401 and 591, Tr. H'rg October 28, 2013, 21:24-25; 22:1-9. Yeomans did not appear at the auction.

---

[8] A motion for relief from stay had previously been granted to AgGeorgia Farm Credit, ACA, as to its collateral on March 27, 2013. Dckt. No. 149. Bank of Eastman also was granted relief from the stay as to its collateral on November 13, 2013. Dckt. No. 398. With consent of the creditors the parcels were included in the Trustee's motion.

See Dckt. No. 591, Tr. H'rg October 28, 2013. Thereafter, Mr. Harrell filed a motion to rescind the sale to Carter Clements "because of a purported undisclosed contract between Mr. Harrell and Carter Clements under which Mr. Clements purportedly agreed to sell the property back to Mr. Harrell." Dckt. No. 681, order denying motion to rescind. Mr. Harrell's motion to rescind was filed in all three bankruptcy cases. Dckt. No. 609; In re Harrell, Chap.7 Case No. 12-30112, Dckt. No. 320.; In re Paradise Farms, Inc., Chap. 7 Case No. 12-30111, Dckt. No. 248. In his motion to rescind, Mr. Harrell details the same allegations/claims in the current Complaint, regarding the Yeomans offer, plans to pay the cases off within 120 days, claims of false statements by Boudreaux, claims of his false arrest, the purported illegal seizure of property, and Boudreaux's purported lack of accounting and communication and other wrongdoings. Id. A hearing was held on this motion and all debtors and their respective trustees were served with notice of the hearing and the trustees for all three bankruptcy cases were present and heard on the matters at the July 2014 hearing. After consideration of the motion, the Court entered an order denying Mr. Harrell's motion to rescind. Dckt. No. 681. This order was not appealed.

In January 2014, Mr. Harrell filed another motion to

remove Boudreaux asserting Boudreaux had: failed to communicate with him; failed to maintain assets; and wasted assets. Dckt. No. 458. The UST objected to the motion. Dckt. No. 462. After notice and hearing, the Court denied the motion to remove. Dckt. No. 473. This order was entered February 4, 2014 and was not appealed. Dckt. No. 473.

In March 2014, Mr. Harrell filed another motion to remove Boudreaux alleging Boudreaux: had given the Court false and misleading information; had conspired with Dodge County Sheriff Donald Helms to give false information to the Dodge County District Attorney Tim Vaughn leading to Mr. Harrell's arrest; committed cruelty to animals by starving and caging his son's dog; and purposely isolated Mr. Harrell from freedom and counsel making reorganization impossible. Dckt. No. 492; In re Harrell, Chap. 7 Case No. 12-30112, Dckt. No. 274. Again, the United States Trustee objected stating there are no specific facts that prove the general assertions and no specific basis for removal. Dckt. No. 494.

Shortly thereafter, Mr. Harrell also filed a motion to release funds and assets seeking for Boudreaux to return all assets taken that do not belong to Saraland as these assets "have been illegally seized and allowed to be taken by both agents for

[Boudreaux] and Donald Helms and other agents of the Dodge County, Georgia Sheriffs Dept., along with other illegal actions and allegations has placed movant Lister Harrell incarcerated and unable to properly defend himself without the return of these assets or the value of to now defend criminal charges that have come entirely from the ongoing conspiring of [Boudreaux] and Agents of the Dodge County, GA Sheriff's Department under the directions of Major Deputy Donald Helms." Dckt. No. 513; In re Harrell, Chap. 7 Case No. 12-30112, Dckt. No. 284; In re Paradise Farms, Chap. 7 Case No. 12-30111, Dckt. No. 216.

In April 2014, Mr. Harrell also objected to Boudreaux's application for compensation stating that the fees and expenses were unnecessary and because Boudreaux had ignored the offer of Mr. Yeomans therefore dragging out the bankruptcy case for Boudreaux's own personal gain. Dckt. No. 517.

A hearing was held April 21, 2014 to consider the three motions listed above: the motion to remove Boudreaux; motion to release funds and assets; and Mr. Harrell's objection to Boudreaux's fee application. Mr. Harrell, Boudreaux, the UST, Mr. Drake (trustee in Paradise Farms' and Mr. Harrell's individual bankruptcy cases), counsel for Bank of Eastman and counsel for AgGeorgia appeared at the hearing. At the hearing, Mr. Harrell

also raised the issue about the whereabouts of the $10,000.00 watch. Dckt. No. 1171, Tr. Hr'g 4/21/2014. Mr. Harrell also raised the allegations of Boudreaux selling property on eBay:

> I just want [the Court] to be aware of this because you've seen these requests to reimburse him for funds for eBay expenses and PayPal expenses. He didn't have time to give me copies of the [land] appraisals and the [timber] cruises, but he's had time to sell my son's Oakley's on eBay from Saraland, and Saraland's not even in the Internet business.

Dckt. No. 1171, at 11, Tr. H'rg April 21, 2014 37:8-14. At the hearing, Boudreaux denied any improper conduct or conspiracy with the Dodge County Sheriff Office regarding Mr. Harrell's arrest. Dckt. No. 1171. Boudreaux stated the property he sold belonged to Saraland as it was bought with Saraland funds. Id. The UST indicated he was at the hearing to hear what Mr. Harrell said and to examine the evidence. The UST stated he has heard from Mr. Harrell on numerous occasions about the Yeomans offer but never got a phone call or email showing Yeomans was willing to, or had the means to, purchase the timber. Id., p. 24. As to Boudreaux's purported conspiracy with the Dodge County Sheriff's Office, the UST said he had spoken with both sides and found no evidence of any such conspiracy. Id. p. 24. Overall, the UST stated there has been no evidence meriting Boudreaux's removal. Id. Separate counsel for two major creditors also

AO 72A

(Rev. 8/82)

13

appeared at the hearing and opposed the removal of Boudreaux. Id. Counsel for AgGeorgia stated he told Mr. Harrell what Mr. Yeomans needed to do to submit a bid and instead Mr. Harrell brought another buyer, Mr. Clements, to the auction and AgGeorgia's counsel noted Mr. Harrell consented to the sale to Clements. Id. Counsel for Bank of Eastman also appeared and supported retention of Boudreaux, as trustee. Id. After consideration, Mr. Harrell's motion to remove Boudreaux was denied. Dckt. No. 531. The motion to release funds and the objection to Boudreaux's fee application also were denied. Dckt. Nos. 543 and 555. The order denying removal was appealed in 2014. Dckt. No. 537. Mr. Harrell's notice of appeal states:

> I feel I Lister Harrell and Saraland LLLP and Paradise Farms have been treated unfairly in the facts to follow:
>
> 1)   This Court, Lawyers, and Trustees have ignored my 5 attempts to pay my creditors.
>
> 2)   This Court ignored my wishes to appeal courts decisions to appoint a Ch. 11 trustee, and to convert other cases to ch. 7 as evidenced by my letters of my wishes to [Mr. Harrell's attorney], copied to [UST] within a week of courts order to appoint and convert.
> .
> .
> .
> 5) If this appeal to a higher court is not allowed, me, my companies and my son will be left penniless, even though the timber assets of Saraland, and value for bridge loans still exist to pay off all creditors and allow myself to exit chapter eleven solvent and in business as ch. 11 intends.

> 6) Proof was given in Court today, 4/21/2014 of the corruption Todd Boudreaux has involved for self profit and not for the good of both debtor and creditor which his position intended.

Dckt. No. 537. Ultimately, this appeal was dismissed by the District Court because he failed to pay the filing fee or file an appellant brief. Dckt. No. 790. Mr. Harrell appealed this dismissal to the Eleventh Circuit. Then, in January 2016, Mr. Harrell filed a motion to dismiss all appeals without prejudice and the Eleventh Circuit dismissed the appeal. Harrell v. Saraland, LLLP, Appeal No. 14-15653, slip op. (11th Cir. Jan. 8, 2016).

In April 2015, Mr. Harrell, for himself and his two companies, Paradise Farms, Inc. and Saraland, LLLP, filed a motion to compel accounting, asking Boudreaux and Mr. Drake, for an accounting of items purportedly belonging to Mr. Harrell, his son and third parties. Dckt. No. 888. Boudreaux and Mr. Roy Rankin, power of attorney for Mr. Harrell, appeared at the hearing held May 5, 2015. The Court allowed Mr. Rankin to speak as Mr. Harrell's agent and to ask questions pertaining to Mr. Harrell's motion and how to get an inventory. After considering the matter, the Court denied Mr. Harrell's motion stating Mr. Harrell lacked standing and needed to talk to his Chapter 7 trustee, Mr. Drake,

AO 72A
(Rev. 8/82)

about any property purportedly belonging to Mr. Harrell or Paradise Farms. Dckt. No. 942. The Court also found compelling abandonment was not appropriate because Boudreaux was continuing to fulfill his trustee duties. Id. This order was not appealed.

Between the three bankruptcy cases and the various adversary proceedings filed in each case, Mr. Harrell has filed numerous appeals. Ultimately, the appeals were dismissed by the District Court and Mr. Harrell appealed the District Court dismissals to the Eleventh Circuit. Upon Mr. Harrell's own motion, the Eleventh Circuit entered dismissals of all his pending appeals effective on January 8, 2016. Dckt. Nos. 1070-1073.

The Plaintiffs' Complaint was filed in the Saraland bankruptcy case and alleges the following "Violations, Alleged Facts and Support:"

> 10. On March 29, 2012, HARRELL filed a petition under Chapter 11 of the bankruptcy code, on behalf of SARALAND, in the United States Bankruptcy Court for the Southern District of Georgia. On March 29, 2013, the United States Bankruptcy Court, Honorable Susan D. Barrett presiding, appointed BOUDREAUX as Chapter 11 Trustee.

> 11. Liberty Mutual issued a blanket bond covering BOUDREAUX in his capacity as Chapter 11 Trustee and later as Chapter 7 Trustee. The blanket bond is a matter of record in this Court and is incorporated by reference thereto. The blanket bond issued by Liberty Mutual is conditioned on the faithful performance by BOUDREAUX of his official duties and was intended to and does cover any breach by him of his duties as both

the Chapter 11 Trustee and the Chapter 7 Trustee.

12. On April 10, 2013, HARRELL, Jon Levis - HARRELL's then bankruptcy attorney - and BOUDREAUX met in HARRELL's home in Dodge County, Georgia, to discuss bankruptcy matters, including full payment of all creditors and full dismissal of the bankruptcy petition.

13. On April 16, 2013, HARRELL phoned BOUDREAUX about the status of the bankruptcy case and what needed to be done in order to dismiss the petition.   HARRELL informed BOUDREAUX that HARRELL would meet BOUDREAUX in BOUDREAUX's office on Monday, April 22, 2013.

14. On April 17, 2013, BOUDREAUX responded to the above stated inquiry, stating in pertinent part that it would take $6,000,000.00 to pay all creditors, including interest and fees. BOUDREAUX further requested that HARRELL meet at BOUDREAUX's office on April 22, 2013 with a plan to pay off the creditors.

15. On April 22, 2013, HARRELL met BOUDREAUX at his office.   At that time, HARRELL gave BOUDREAUX a commitment from H.G. Youmans of Youmans Wood and Timber, [9] located in Swainsboro, Georgia.   The commitment consisted, inter alia, of a plan to harvest and purchase timber on property owned by SARALAND, the proceeds of such purchase by Youmans to be used to pay off all creditors.   Upon information and belief, HARRELL shows that the actual value of the land, trees and timber on SARALAND property and the potential sales price of the SARALAND property was in excess of $30,000,000.00.

16. Notwithstanding the above, BOUDREAUX took no action to determine the viability of the Youmans commitment to pay off all creditors, either at the time of the commitment or anytime thereafter. Instead, on May 1, 2013, BOUDREAUX, aided by Dodge County District Attorney Tim Vaughn, unlawfully and illegally seized

---

[9] The Court refers to this as the Yeomans offer throughout the Opinion and Order.

property from HARRELL's home in Dodge County, Georgia. Also, on May 31, 2013, BOUDREAUX filed an interim report with the United States Bankruptcy Court, in which BOUDREAUX wrongfully accused HARRELL of crimes, misappropriation of property and other wrongful acts. The interim report made no mention of any of the efforts by HARRELL to pay creditors or the Youmans commitment or the seizure of property. Shortly after the seizure of property, BOUDREAUX began illegally and unlawfully selling the property which had been seized.

17. BOUDREAUX carried out his illegal, unlawful and improper sales of property, as well as the unlawful use and handling of funds derived thereby, in a deceptive manner in order to conceal from Plaintiffs and others the fact that he was acting in violation of his fiduciary duties as Chapter 7 Trustee and for his own personal gain.

18. HARRELL did not have knowledge of BOUDREAUX's breach of fiduciary duties until approximately May 31, 2013.

19. On May 3, 2013, HARRELL was illegally and unlawfully arrested and incarcerated as a result of actions by Dodge County District Attorney Tim Vaughn. HARRELL remained incarcerated until October 7, 2013, when he was released on bond. At all times pertinent hereto, BOUDREAUX was aware of HARRELL's arrest and incarceration.

20. On or about December 27, 2016, BOUDREAUX, either voluntarily or involuntarily, was removed as a Chapter 11 Trustee for the Southern District of Georgia. Thereupon, BOUDREAUX was stricken as Trustee in the SARALAND bankruptcy case. (Doc. # 1115).

## COUNT 1/BREACH OF FIDUCIARY DUTY

21. The allegations and averments of paragraphs 1 through 20 are incorporated herein by reference thereto.

22. Pursuant to 11 U.S.C. §1106(a) a Chapter 11

AO 72A

(Rev. 8/82)

Trustee shall:

> (1) perform the duties of the trustee, as specified in paragraph (2) of 11 U.S.C. §704(a);

> (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; and

> (5) as soon as practicable, file a plan under 11 U.S.C. §1121, file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7, 12, or 13 of Title 11 or dismissal of the case.

23. Pursuant to 11 U.S.C. §704(a) the Chapter 7 Trustee has a duty to:

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; and

> (2) be accountable for all property received.

24. During BOUDREAUX's tenure as Trustee in the SARALAND bankruptcy case, he failed to fulfill the duties imposed upon him by the United States Bankruptcy Code, including Sections 1106 and 704, thereby breaching the condition of the blanket bond.

25. During BOUDREAUX's tenure as Trustee in the SARALAND bankruptcy case, he did:

> (1) wrongfully, illegally, deliberately and intentionally seize non-bankruptcy estate property;

> (2) wrongfully, illegally, deliberately and

intentionally sell non-bankruptcy estate property;

(3) wrongfully, illegally, deliberately and intentionally accuse HARRELL of crimes and other misdeeds in order to take advantage of the office of the Bankruptcy Trustee and to profit thereby; and

(4) wrongfully, illegally, deliberately and intentionally falsify asset reports and other bankruptcy records.

26. BOUDREAUX did thereby subject himself to personal liability for willful and deliberate violations of his fiduciary duties as Chapter 11 and Chapter 7 Trustee.

### COUNT 2/CO-MINGLING FUNDS

27. The allegations and averments of paragraphs 1 through 26 are incorporated herein by reference thereto.

28. Upon information and belief, BOUDREAUX co-mingled bankruptcy estate funds, PARADISE funds, SARALAND funds and HARRELL funds with his personal assets and those of a business entity or entities which he owned or over which he exercised control.

### COUNT 3/CONVERSION

29. The allegations and averments of paragraphs 1 through 28 are incorporated herein by referenced thereto.

30. Upon information and belief, BOUDREAUX converted bankruptcy funds, PARADISE funds, SARALAND funds and HARRELL funds to his own use.

### COUNT 4/FRAUD

31. The allegations and averments of paragraphs 1 through 30 are incorporated herein by reference thereto.

AO 72A

(Rev. 8/82)

32.   At the time of the meeting on April 22, 2013, BOUDREAUX assured HARRELL and represented to HARRELL that he would contact Youmans about the commitment. The assurances and representations made by BOUDREAUX were false when BOUDREAUX made them. BOUDREAUX knew the assurances and representations were false when he made them, in that BOUDREAUX never intended to contact Youmans but, instead, proceeded to use the office of Trustee for his own gain, and was deceptive in not disclosing the meeting and the commitment. BOUDREAUX made the assurances and representations with the intent and purpose of deceiving Plaintiffs and others and to induce Plaintiffs upon reliance on the assurances and representations. Plaintiffs were induced into relying on the assurances and representations in that HARRELL relied upon BOUDREAUX to take the action that was promised in order to pay off creditors and have the bankruptcy petition dismissed. As a direct and proximate result of the conduct of BOUDREAUX, Plaintiffs have been damaged by loss of funds and property in an amount in excess of $30,000,000.00.

33.   The acts of BOUDREAUX, including his deception of his unlawful activities, constitute a willful and knowing fraud against the Plaintiffs.

### COUNT 5/ACCOUNTING

34.   The allegations and averments of paragraphs 1 through 33 are incorporated herein by referenced thereto.

35.   Plaintiffs show that they are entitled to a strict and accurate accounting from BOUDREAUX.

### COUNT 6/ BREACH OF BOND

36.   The allegations and averments of paragraphs 1 through 35 are incorporated herein by reference thereto.

37.   By committing the above described intentional, malicious, wanton, illegal and unlawful acts which

resulted in harm to Plaintiffs, a condition or conditions of BOUDREAUX's bond has and have been breached. Because of that breach, BOUDREAUX and Liberty Mutual, are liable to Plaintiff on said bond.

## PUNITIVE DAMAGES

38. The allegations and averments of paragraphs 1 through 37 are incorporated herein by reference thereto.

39. Plaintiffs show that BOUDREAUX has acted wantonly, fraudulently, maliciously and with specific intent to cause harm to the Plaintiffs, thereby authorizing an award of punitive damages.

## LIABILITY OF SURETY

40. Liberty Mutual as surety under the Trustee's bond, is liable for Boudreaux's failure to faithfully perform his duties as Chapter 11 Trustee and as Chapter 7 Trustee.

41. Boudreaux's conduct breached the condition of Liberty Mutual's blanket bond, thereby obligating Liberty Mutual to make Harrell, Saraland, and Paradise whole for the damages they, and each of them, suffered by reason of Boudreaux's breach of his duties as a Chapter 7 Trustee.

## ATTORNEYS FEES

42. The allegations and averments of paragraphs 1 through 41 are incorporated herein by reference thereto.

43. Plaintiffs show that BOUDREAUX has acted in bad faith, has been stubbornly litigious and has caused Plaintiffs unnecessary trouble, expense and delay, thereby entitling Plaintiffs to an award of reasonable attorney's fees and the cost of this action.

## WHEREFORE, Plaintiffs respectfully pray as follows:

AO 72A

(Rev. 8/82)

a)     That process issue and service be had on Boudreaux and Liberty Mutual;

b)     That Plaintiffs be awarded general damages against Liberty Mutual and Boudreaux, jointly and severally;

c)     That Plaintiffs have a strict and accurate accounting from Boudreaux;

d)     That Plaintiffs be awarded punitive damages against Liberty Mutual and Boudreaux, jointly and severally;

e)     That Plaintiffs be awarded prejudgment and postjudgment interest;

f)     That BOUDREAUX be ordered to disgorge to this bankrupt estate all fees and expenses he received in any capacity in this bankruptcy case;

g)     That Plaintiffs be awarded reasonable attorney's fees; and

h)     That Plaintiffs have such other and further relief as may be appropriate and as may be provided by law.

Adversary Proceeding No. 18-03002, Dckt. No. 1.

In the Complaint, Plaintiffs also raise the fact that Boudreaux's resigned as a panel trustee for the Southern District of Georgia in December 2016. Mr. Harrell notes this resignation "was not [a] commonplace, ordinary event [by] any means. It came as a result of [Mr. Boudreaux's] misdeeds and malfeasance in the Mohr case. He resigned because he had to." Adversary Proceeding No. 18-03002, Dckt. No. 28 at p. 3.

## CONCLUSIONS OF LAW

"A complaint may be dismissed for failure to state a claim 'when its allegations ... show that an affirmative defense bars recovery on the claim.'" <u>Horne v. Potter</u>, 392 F. App'x 800, 801 (11th Cir. Aug. 16, 2010) (<u>citing</u> <u>Marsh v. Butler Cty, Ala.</u>, 268 F.3d 1014, 1022 (11th Cir. 2001). As previously stated, Defendants have each filed Motions to Dismiss the Complaint on the following grounds: collateral estoppel/issue preclusion; res judicata/claim preclusion; failure to state a claim; absolute and qualified immunity; lack of standing; statute of limitations; and failure to comply with Federal Tort Claims Act. For the following reasons, the Defendants' motions are granted in part and denied in part.

## Res Judicata/Claim Preclusion.[10]

Defendants assert the claims set forth in the Complaint are barred by issue and claim preclusion. They point to the following orders and transcripts in the Saraland case and the adversary proceedings where the Court considered and ruled upon these exact same assertions:

Order of September 9, 2013 ("In requesting the removal of the Chapter 11 Trustee, Mr. Harrell alleges the

---

[10] For organizational purposes this order is divided by subheadings. Nevertheless, many of the operative facts and analysis apply throughout, and the sections are not intended to stand alone in support of the referenced heading, but rather are considered and applied in totality.

Chapter 11 Trustee has improperly seized property that does not belong to Saraland, LLLP. Mr. Harrell's allegations of wrongdoing by the Chapter 11 Trustee are unsubstantiated.") [Dkt. 323 at 8];

Order of October 21, 2013 ("For the reasons set forth at the hearing, the Court finds that the Trustee has exercised his best business judgment and the sale is in the best interest of the bankruptcy estate.") [Dkt. 362 at 3];

Order of October 23, 2013 ("Mr. Harrell as general partner of Saraland and president of [Paradise Farms] lacks standing to file a motion to dismiss on behalf of these legal entities.") [Dkt. 366 at 1];

Order of October 23, 2013 ("The conversion in Paradise and the appointment of a Chapter 11 Trustee in Saraland were the result of Mr. Harrell's gross mismanagement and continuing loss to the estate. There was significant evidence of commingling of assets [by Mr. Harrell]." [Dckt. 366 at 6];

Order of February 4, 2014 ("For the reasons set forth on the record at the hearing held on February 4, 2014, the Motion to Remove or Otherwise Enjoin or Prevent Trustee from Dissipating Assets is ORDERED DENIED.") [Dkt. 473 at 1];

Order of July 22, 2014 ("As I have previously ruled on several occasions, Mr. Harrell does not have standing to rescind the contract between Saraland and Carter Clements.") [Dkt. 681 at 3]; and

Order of December 30, 2015 ("[A]s previously addressed in numerous orders, Mr. Harrell is not the debtor in this case and cannot represent the debtor . . . . Mr. Harrell lacks standing to object to the Debtor's conversion.") [Dkt. 1028 at 4].

Adversary Proceeding No. 18-03002, Dckt. No. 13, p. 4-5. Liberty

Mutual also argues the order denying Mr. Harrell's motion to

remove Boudreaux and the order denying Mr. Harrell's motion for an accounting preclude Plaintiffs' Complaint.   Dckt. Nos. 531 and 942, respectively.

In addition, Defendants argues the orders entered dismissing the following adversary proceedings are final orders on the merits under Federal Rule of Civil Procedure 41[11]:

> Harrell et. al. v. Boudreaux et al., Ch. 7 Case No. 12-30111, Adv. Proceeding No. 14-03013 slip op. (Bankr. S.D. Ga. Aug. 24, 2015)(dismissed for failure to pay the filing fee as ordered by the Court);

> Harrell et al. v. Boudreaux et. al., Chap. 7 Case No. 12-30112, Adv. Proceeding No. 14-03014 slip op. (Bankr. S.D. Ga. Jan. 6, 2016)(dismissed at a hearing held on January 5, 2016 based upon Mr. Harrell's failure to appear, failure to perfect service within 120 days and because the case had been pending since September 15, 2014 and a written order dismissing was entered January 6, 2016); and

> Harrell et. al. v. Boudreaux et. al., Chap. 7 Case No. 12-30113, Adv. Proceeding No. 14-03015, slip op. (Bankr. S.D. Ga. Aug. 3, 2015)(dismissed for the failure of Mr. Harrell to pay the filing fee as ordered

---

[11]   Federal Rule of Civil Procedure 41 is made applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure 7041.   Rule 41(b) states in pertinent part:

> b) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule -- except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 -- operates as an adjudication on the merits.

by the Court).

Plaintiffs contend they are not trying to relitigate issues already litigated, rather, they assert that the following issues illustrate matters that have not been previously litigated: Boudreaux's selling of assets that did not belong to Saraland; Boudreaux's purported failure to make a proper accounting; and Boudreaux's failure to consider the Yeomans offer. Plaintiffs state these issues are new and are not barred. Plaintiffs also assert claim preclusion does not apply because the claims have never been presented to the Court in the current form and that none of the orders could bind Paradise Farms and Saraland because they are artificial entities that require an attorney to represent them and so the orders against Mr. Harrell cannot be res judicata as to Paradise Farms and Saraland.

The doctrine of res judicata, or claim preclusion, bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action. In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). The following elements must be met to invoke the doctrine: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their

AO 72A
(Rev. 8/82)

27

privies; and (4) both cases must involve the same causes of action." Id. (citations omitted). Involving the same causes of action means that the latter case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action." In re Piper, 244 F.3d at 1297 (citing Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999)). Defendants have the burden of proof as the party asserting res judicata. In re Piper, 244 F.3d at 1296. For the following reasons, the Court finds the following orders are final adjudications on the merits of the same allegations set forth in the instant Complaint and preclude Plaintiffs from bringing this adversary proceeding: order denying motion to remove trustee, Dckt. No. 531; order denying the motion to rescind, Dckt. No. 681; the order denying motion for an accounting, Dckt. No. 942; order overruling Mr. Harrell's objection and convert the case, Dckt. No. 1028; order dismissing Adversary Proceeding No. 14-03013, Dckt. No. 51; order dismissing Adversary Proceeding No. 14-03015, Dckt. No. 45.

Addressing each raised order in turn:

**1. Defendants assert the order denying the motion to remove Boudreaux as Trustee entered September 9, 2013, involve these same factual allegations and precludes the current Complaint. Dckt. No. 323.**

This motion and order address the same allegations

AO 72A

(Rev. 8/82)

raised in the Complaint: breach of fiduciary duty, commingling of funds, fraud, conversion and lack of an accounting.   See Adversary Proceeding 18-03002, Dckt. No. 1.   However, given the seriousness of the allegations set forth in the motion and the status of the case at the time, this order was entered "without prejudice" and therefore is not an adjudication on the merits or final judgment and thus is not res judicata.   Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001)("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim.").   "'[D]ismissal . . . without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' Rule 41(a)(1), and thus does not have a res judicata effect."   Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1999).   For these reasons, this September 2013 order is not res judicata to claims currently asserted.

**2. Defendants point to the order on the Trustee's motion to sell, which granted Mr. Harrell more time to procure a higher bid as res judicata.   Dckt. No. 362.**

This was not a final sale order, rather it continued the Trustee's motion to sell, thus it is not res judicata.   Dckt. No. 362.   However, it is important to note the context and final provisions of this order.   Mr. Harrell objected to the sale of

the property requesting a continuance to afford him an opportunity to bring in a purchaser willing to pay a higher price and he mentioned that Mr. Yeomans was interested in buying the timber. This order granted Mr. Harrell more time and basically set up a competitive bid procedure providing a deadline for bids and providing: "[F]urthermore, a letter of credit or similar documentation showing the buyer is ready, willing, and able to purchase the property on the terms set forth in the proposed contract and has the financial means to close on the property must be filed with the Trustee and Court by 5:00 p.m. on Friday, October 25, 2013. The Clerk is directed to continue the Trustee's Motion to Sell to October 28, 2013, at noon." Dckt. No. 362.

**3. The next order relied upon by Defendants is an order denying Mr. Harrell's motion to dismiss all three bankruptcy cases - - Saraland, Paradise Farms, and Lister Harrell, individually. Dckt. No. 366.**

In the underlying motion, Mr. Harrell, General Partner of Saraland, LLP and President of Paradise Farms Inc. sought to dismiss all three bankruptcy cases stating he has not been able to reorganize his debts as he had hoped to do and claiming he had money to pay off his creditors outside of bankruptcy. Dckt. No. 335. This motion was opposed by the UST, creditors, and both trustees. After hearing, the Court denied the motion. Dckt. No. 366. This order was an order denying dismissal and is not a

AO 72A
(Rev. 8/82)

final order; therefore, the order does not have res judicata effect.

**4. Next, Defendants argue the order denying Mr. Harrell's motion to remove the Trustee is res judicata to the current allegations. Dckt. No. 473.**

In the underlying motion to remove Boudreaux filed in January 2014, Mr. Harrell alleges Boudreaux committed acts of waste and failed to maintain and safeguard assets of Saraland, and committed other wrongdoings and refused to communicate. Dckt. No. 458.   This order entered was after a February 2014 hearing and was not appealed.   However, at the hearing the Court stated the denial was without prejudice providing if Mr. Harrell had something to support his allegations of malfeasance the UST and Court would consider such matters.   Therefore, this order was not a final adjudication on the merits and thus is not res judicata.

**5. Defendants assert the orders dismissing entered in Adversary Proceedings 14-03013 and 14-03015 bar re-litigating the claims currently being raised.**

These complaints claim Boudreaux: raised false accusations against Mr. Harrell leading to Mr. Harrell's arrest; illegally seized property; and failed to properly respond to the Yeomans "commitment letter."   Both adversary proceedings were dismissed and by operation of Federal Rule 41(b), these dismissals

were adjudications on the merits.   <u>See</u> Fed. R. Civ. P. 41(b) made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7041.

Plaintiffs argue dismissal of these adversary proceedings with prejudice is too harsh a sanction for failing to prosecute and pay the filing fee.   <u>See</u> <u>Camp v. Oliver</u>, 798 F.2d 434, 438 (11th Cir. 1986).   After considering the matter and the facts of this case, the Court disagrees.   By operation of Rule 41(b), these were final adjudications.   Given the sheer volume and numerous times these same allegations have been raised in the three bankruptcy cases, the involvement of the UST, the chapter 7 trustee in Paradise Farms' and Mr. Harrell's individual bankruptcies, and other parties in interest (AgGeorgia, Colony Bank, Bank of Eastman, and a subsequent chapter 7 trustee), a dismissal with prejudice is not too harsh.   These same unsubstantiated allegations have been raised for years.   Mr. Harrell has been told numerous times, by numerous individuals, to provide evidence to support these allegations and has failed to substantiate these claims.   He could have filed a motion for reconsideration or appealed the orders dismissing these adversary proceedings and he chose not to do so.   For these reasons, the orders dismissing 14-03013 and 14-03015 are final orders with an

adjudication on the merits for res judicata purposes as to Mr. Harrell and Saraland.

The third element for res judicata requires the same parties or their privities. The listed parties involved in these adversary proceedings were Mr. Harrell, Saraland, and Paradise Farms as plaintiffs against Tim Vaughn, Lynn Sheffield, Donald Helms, and Boudreaux as Trustee of Saraland as defendants. Because Liberty Mutual is the surety on Boudreaux's bond, it is in privity with Boudreaux for purposes of res judicata. See Coffee Iron Works v. QORE, Inc., 744 S.E.2d 114, 140-41 (Ga. Ct. App. 2013)("'A party's insurer stands in the shoes of the insured as to identity of parties or privies.' Based on this principle, we conclude that Coffee's status as guarantor of the surety bond places it in privity with Douglas Asphalt, who was the plaintiff in the earlier litigation. Thus, there is identity of privies."); Cincinnati Ins. Co. v. MacLeod, 577 S.E.2d 799, 803 (Ga. Ct. App. 2003)(privity between insurer and insured). Furthermore, Liberty Mutual is allowed to assert any defenses available to its principal except those personal to Boudreaux. See Peterson v. Midas Realty Corp., 287 S.E.2d 61, 62 (Ga. Ct. App. 1981)("Generally a surety or guarantor may assert all defenses to a contract which would be available to his principal, with the

exception of personal defenses, e.g., infancy, incapacity, bankruptcy, etc.").

As to Mr. Harrell, Saraland, and Paradise Farms, these dismissals are binding on Mr. Harrell and Saraland; however, for the reasons discussed below, they are not binding upon Paradise Farms. Mr. Harrell is bound as he was the actual plaintiff in the adversaries. The orders also bind Saraland as it is the debtor and its chapter 11 trustee, who represents the Saraland bankruptcy estate is bound by the terms of the orders. See In re Collins, 489 B.R. 917, 922 (Bankr. S.D. Ga. 2012)(trustee in privity with debtor and res judicata applies). Courts find privity between parties "in three circumstances: (1) when the non-party succeeds to a party's interest in property; (2) when the non-party controlled the original suit; or (3) when the non-party's interests were adequately represented by a party in the original suit." Id. Boudreaux would have the same incentive to defend against Mr. Harrell's allegations -- that property did not belong to Saraland -- and he succeeded to Saraland's interest in property when he became the trustee and obtained numerous court orders on the same.

Paradise Farms, however, is not bound as to these orders. Mr. Harrell could not represent Paradise Farms as he was

not an attorney and the Paradise Farms trustee was not a party to, and did not participate in, these adversary proceedings.

The matters also must "involve the same causes of action." In re Piper, 244 F.3d at 1297. Involving the same causes of action means that the latter case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action." In re Piper, 244 F.3d at 1297. The complaints in these adversary proceedings claim Boudreaux: raised false accusations against Mr. Harrell leading to Mr. Harrell's arrest; illegally seized property; and failed to properly respond to the Yeomans "commitment letter." These are the same cause of action raised in the current Complaint. For these reasons, the Court finds the dismissals of these adversary proceedings were final adjudications on the merits and bar Saraland and Mr. Harrell from raising these same claims now as these claims were raised or could have been raised.

**6. Defendants also argue the order dismissing Adversary Proceeding No. 14-03014 is res judicata as to the allegations currently being raised.**

The complaint is identical to the complaints in the Adversary Proceeding Nos. 14-03013 and 14-03015. However, the complaint was dismissed for Mr. Harrell's failure to properly serve the summons within the time limit set forth in Federal Rule

of Civil Procedure 4(m),[12] which is an exception to Federal Rule of Civil Procedure 41(b)'s "adjudication on merits." <u>See</u> Fed. R. Civil P. 41(b)("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--<u>except one for lack of jurisdiction</u>, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.")(emphasis added).   Therefore, dismissal of Adversary Proceeding 14-03014 is not an adjudication on the merits under Rule 41(b).

**7. Defendants argue the order denying Mr. Harrell's motion to rescind the contract of sale of land from Saraland to Carter Clements and requesting the Court issue a cease and desist order as to all activities in Saraland and Paradise Farms bankruptcy cases is res judicata to the current claims. Dckt. No. 681.**

This 2014 motion filed by Mr. Harrell, individually and on behalf of Saraland and Paradise Farms, details the same allegations/claims as set forth in the Complaint.   Dckt. No. 609. Mr. Harrell references the Yeomans offer and states he presented plans to Boudreaux within 120 days of filing of the petition to use resources of Saraland to satisfy all debts and says that this Court, Boudreaux, and the United States Trustee were aware of sufficient funds to pay all creditors prior to April 2013.   <u>Id.</u>

---

[12] Federal Rule of Bankruptcy Procedure 7004 makes Federal Rule of Civil Procedure applicable to Adversary Proceedings.

The motion alleges Boudreaux made untrue allegations against Mr. Harrell leading to his arrest. Id. The motion also states that false allegations from Boudreaux to the Court have allowed millions of dollars to be stolen from Mr. Harrell. Id. The motion includes: copies of internet posts about a purported illegal break-in; seizure of property; the Yeomans offer; the lack of an accounting and lack of communications; and other purported wrongdoings of Boudreaux. Id. Mr. Harrell requested all activities to stop in all three bankruptcy cases because he purported to have funds to pay off all creditors in all the three cases. Id.

This motion was filed in all three bankruptcy cases and all the debtors were served with notice of the hearing and the trustees for all three bankruptcy cases were present and heard on the matter at the hearing held in July 2014.[13] See Dckt. No. 677, Tr. H'rg held July 1, 2014. This order binds Saraland, Paradise Farms, and Mr. Harrell. The chapter 7 trustee in Mr. Harrell's and Paradise Farms' bankruptcy cases is charged with over-seeing those respective bankruptcy estates and these claims

---

[13] Hearing on the motion was initially scheduled to be held June 11, 2014; however, upon Mr. Harrell's request, the hearing was continued to July 1, 2014. Dckt. No. 668. Mr. Harrell requested another continuance due to incarceration; however, this request was denied. Dckt. No. 666.

AO 72A
(Rev. 8/82)

of commingling and illegal seizure of property belonging to Mr. Harrell and Paradise Farms are assets of those respective bankruptcy estates. The chapter 7 trustee of Paradise Farms and Mr. Harrell's bankruptcy cases duly appeared at the hearing and opposed Mr. Harrell's motion. Mr. Harrell and Paradise Farms are bound by this order.

Saraland as a party is equally bound by this order. Furthermore, Mr. Harrell's interest in Saraland also belongs to his chapter 7 bankruptcy estate and Mr. Drake as the trustee in Mr. Harrell's individual chapter 7 was the proper party to pursue those actions and/or hire an attorney on behalf of Saraland to sue Boudreaux, if appropriate. See In re Whet, Inc., 750 F.2d 149, 150 (1st Cir. 1984)(stocks of shareholder and president of chapter 11 debtor are property of the estate of his individual chapter 7 bankruptcy and thus the chapter 7 trustee is proper party in interest to ask the court to appoint counsel for the chapter 11 debtor).

The Court considered each of these allegations on the merits. Standing in this context deals with federal bankruptcy standing issues involving a chapter 7 debtor where the trustee has reviewed the assets and liabilities and does not anticipate a surplus remaining for the debtor. As a result, the claims were

properly considered and analyzed on the merits. See Schafler v. Indian Spring Maint. Ass'n., 139 F. App'x 147, 150 (11th Cir. 2005)(giving res judicata effect to prior order of dismissal that "fully analyzed the merits of [the] case" and "noted that, because [the plaintiff] failed to allege any facts that would entitle her to relief, no reasonable jury could determine that she was entitled to damages that would meet the jurisdictional amount"); Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1190 (11th Cir. 2003)("When we undertake such a substantive inquiry in this case, there can be no reasoned doubt that—as the district court itself recognized in Davila II—the court did not base its dismissal on jurisdictional grounds. Accordingly, it was a final judgment on the merits, and it is entitled to preclusive effect."); In re DeWayne, 2018 WL 4056986, at *5 (Bankr. D.S.C. Aug. 24, 2018)(finding prior order dismissing claim based upon lack of standing and failure to state a claim a final order and thus, res judicata as to the debtor's complaint). Throughout these proceedings, the Court has afforded Mr. Harrell and his representatives the opportunity to present arguments and evidence in all three bankruptcy cases and related adversary proceedings and has considered these arguments on the merits. Dckt. No. 681. For these reasons, the Court finds this order precludes the claims

in Plaintiffs' Complaint which have been brought or could have been brought and are now barred by the doctrine of res judicata.

**8. Defendants point to the order converting the Saraland case to a Chapter 7 as a final order that precludes litigation of the current claims. Dckt. No. 1028**

The motion to convert sets forth much of the history of the case and addresses the selling of property online to generate funds for the bankruptcy estate's administrative costs due to the significant litigation and remediation with the Environmental Protection Agency and how various property was purchased with funds from Saraland and therefore belonged to Saraland.  Dckt. No. 997.  The hearing on the motion was held in December 2015 and Mr. Harrell appeared and argued in opposition to the motion.  He again, raised the following issues:  the Yeomans offer; his arrest on purported bogus charges; and his wanting a list of property sold and seized.  Considering the merits of the arguments and finding no evidence in support of his objections, the Court overruled Mr. Harrell's objection and converted the case to a chapter 7 bankruptcy case.  Dckt. No. 1028.  This order was not appealed and is a binding final order by a Court of competent jurisdiction.  These arguments were properly addressed on the merits and the order is res judicata preventing Plaintiffs from raising these same claims in the current Complaint.

In addition, after conversion and after Boudreaux resigned as the chapter 7 trustee, a successor chapter 7 trustee, Joy R. Webster, was appointed as chapter 7 trustee. Dckt. No. 1115. After her appointment, Plaintiffs sought the trustee to abandon her interest in the causes of action against Boudreaux. Dckt. No. 1164. At the hearing held May 8, 2018, on the motion to compel abandonment, counsel for the successor trustee informed the Court that the trustee has reviewed this claim and has asked Mr. Harrell for information supporting this claim and none has been provided. This successor trustee stated upon review of the claim, she saw no merit to the claim and thought it would be a burden on the bankruptcy estate if not abandoned. After considering the matter, the Court entered an order allowing abandonment. Dckt. No. 1181.

**9. Defendants point to the order denying Mr. Harrell's motion to remove Boudreaux as an order with preclusive effect on the current Complaint. Dckt. No. 531.**

Mr. Harrell filed another motion to remove and investigate Boudreaux in March 2014 alleging Boudreaux: had given the Court false and misleading information; conspired with the Dodge County Sheriff Donald Helms to give false information to the Dodge County District Attorney Tim Vaughn leading to Mr. Harrell's arrest; committed cruelty to animals by starving and

AO 72A
(Rev. 8/82)

caging his son's dog; and purposely isolated Mr. Harrell from freedom and counsel making reorganization impossible. Dckt. No. 492. This motion was filed in Saraland and in Mr. Harrell's individual bankruptcy case and asked for relief in all three bankruptcy cases. The UST again objected to Mr. Harrell's motion stating there are no specific facts supporting removal. Dckt. No. 494.

Shortly after filing this motion, Mr. Harrell also filed a motion to release funds and assets seeking for Boudreaux to return all assets taken that Mr. Harrell alleges do not belong to Saraland as these assets "have been illegally seized and allowed to be taken by both agents for [Boudreaux] and Donald Helms and other agents of the Dodge County, Georgia Sheriffs Dept., along with other illegal actions and allegations has placed movant Lister Harrell incarcerated and unable to properly defend himself without the return of these assets or the value of--to now defend criminal charges that have come entirely from the ongoing conspiring of [Boudreaux] and Agents of the Dodge County, GA Sheriff's Department under the directions of Major Deputy Donald Helms." Dckt. No. 513.

At this same time, Mr. Harrell also objected to Boudreaux's application for compensation, stating that the fees

AO 72A
(Rev. 8/82)

and expenses were unnecessary because Boudreaux had ignored the Yeomans offer. Dckt. No. 517.

A hearing was held in April 2014 to consider these three motions and objections. Mr. Harrell, Boudreaux, the UST, Mr. Drake (trustee for Paradise Farms' and Mr. Harrell's chapter 7 bankruptcy cases), counsel for Bank of Eastman, and counsel for AgGeorgia appeared at the hearing. At the hearing, Mr. Harrell accused Boudreaux of taking his personal belongings including a $10,000.00 watch that Mr. Harrell. Dckt. No. 1171, Tr. Hr'g 4/21/2014. Mr. Harrell also raised the issue of Boudreaux selling property on eBay:

> I just want [the Court] to be aware of this because you've seen these requests to reimburse him for funds for eBay expenses and PayPal expenses. He didn't have time to give me copies of the [land] appraisals and the [timber] cruises, but he's had time to sell my son's Oakley's on eBay from Saraland, and Saraland's not even in the Internet business.

Dckt. No. 1171, Tr. H'rg 4/21/2014 37:8-14. At the hearing, Boudreaux denied any conspiracy with the Dodge County District Attorney and/or Sheriff's Office involving the arrest of Mr. Harrell and the evidence of a tap and trace Mr. Harrell presented to the Court showed it was obtained by the District Attorney and Mr. Harrell had no evidence to support this conspiracy allegation as to Boudreaux. Dckt. No. 1171, Tr. H'rg 4/21/2014. Boudreaux

AO 72A

(Rev. 8/82)

stated the property he had sold belonged to Saraland as it was bought with Saraland funds.  Id.

The UST also appeared and indicated he was at the hearing to consider Mr. Harrell's allegations and to examine the evidence.  The UST stated Mr. Harrell has raised the Yeomans offer on numerous occasions but Mr. Harrell has never shown Yeomans is willing to, or had the means to, purchase the timber. Id. at 24.  As to the allegation Boudreaux had conspired with the Dodge County District Attorney and/or Sheriff's Office, the UST said he had spoken with both sides and found no evidence of any conspiracy.  Id. at 24.  As to the allegations that Boudreaux has unlawfully taken assets of Mr. Harrell, his son, or other third parties, or failed to duly communicate, the UST thought those had been adequately refuted.  Id. at 24-25.  In conclusion, the UST stated there has been no evidence presented meriting Boudreaux's removal and the "U.S. Trustee's office doesn't perceive that [Boudreaux] has been inconsistent with his duties."  Id. at 23-25.

Separate counsel for two major creditors, AgGeorgia and Bank of Eastman, also appeared at the hearing and opposed the removal of Boudreaux.  Id. at 30.  Counsel for AgGeorgia stated he personally told Mr. Harrell what Mr. Yeomans needed to do to

bid on the property and instead Mr. Harrell brought another buyer, Mr. Clements, to the auction and at that time, Mr. Harrell asked the Court to approve the sale to Clements. Id. at 29-31. Bank of Eastman also appeared and supported retention of Boudreaux as the trustee. Id. at 32.

After consideration of the merits, Mr. Harrell's motion to remove Boudreaux was denied. Dckt. No. 531. This order was appealed to the District Court and dismissed by District Court for no fee and no Appellant Brief. Dckt. No. 790. Mr. Harrell appealed the District Court dismissal to the Eleventh Circuit, but he subsequently dismissed his appeal in January 2016. This order is a final order on the merits against the same parties and/or their privities because all Plaintiffs and their respective trustees were served with notice and serves as res judicata and prevents the claims in the Complaint as those claims were raised or could have been raised.

**10. Defendants argue the order denying Mr. Harrell's motion to compel accounting is res judicata. Dckt. No. 942.**

Mr. Harrell filed a motion to compel accounting in April 2015 asking Boudreaux and Paradise Farms' and Mr. Harrell's chapter 7 trustee, Mr. Drake, for an accounting of personal items purportedly belonging to him and his son. Dckt. No. 888. The Court allowed Mr. Rankin to speak as Mr. Harrell's power of

attorney.  Mr. Rankin stated how Mr. Harrell wanted an accounting of all property seized and sold in all three bankruptcy cases. After notice and hearing, the Court denied Mr. Harrell's motion stating that monthly operating reports and sales reports give an accounting.  Dckt. No. 942.  This order was not timely appealed and is res judicata as to Mr. Harrell, Paradise Farms, and Saraland.  Therefore, this order precludes the allegations in the current Complaint as those have been raised or could have been raised.

In conclusion, these motions and orders show a small sample of the numerous pleadings filed in the three bankruptcy cases by Mr. Harrell, raising these same issues on behalf of himself and Saraland and Paradise Farms.  The Plaintiffs were each in their own respective bankruptcy cases allowing the respective trustee to properly protect the assets of the separate estates.  These separate bankruptcy estates had separate interests and incentives and duties to perform, including the pursuit of assets and claims.  Mr. Harrell appeared on numerous occasions and made these same arguments.  As to Saraland, Mr. Harrell is the general partner and majority stakeholder of Saraland according to Saraland's bankruptcy schedules and when he filed his own bankruptcy, his interest in Saraland belonged to

his chapter 7 trustee, Mr. Drake.  His chapter 7 trustee was the proper party and got noticed on these motions, participated in the hearings and ultimately, chose not to pursue the actions, representing to the Court, he did not support Mr. Harrell's motions.  Mr. Harrell and Paradise Farms are bound by the actions and/or inaction of their respective chapter 7 trustee.  Saraland is equally bound by these orders because its chapter 11 trustee was a party to the orders in its bankruptcy case.  Furthermore, Mr. Harrell's interest in Saraland belong to his chapter 7 bankruptcy estate and Mr. Drake as trustee would have been the proper party to hire an attorney on behalf of Saraland to sue Boudreaux, if appropriate.  See In re Whet, Inc., 750 F.2d 149, 150 (1st Cir. 1984)(stocks of shareholder and president of chapter 11 debtor are property of the estate of his individual chapter 7 bankruptcy and thus the chapter 7 trustee is proper party in interest to ask the court to appoint counsel for the chapter 11 debtor).  Finally, Mr. Harrell has been heard asserting these arguments on behalf of himself, Saraland, and Paradise Farms. Finally, notwithstanding the foregoing Mr. Harrell was allowed to assert these claims on the merits.

Res judicata precludes the claims that have been raised or could have been raised in previous litigation between the same

parties and their privities.  This case illustrates the need and purpose behind the doctrine of res judicata.  The docket itself addresses and refutes many of the allegations raised.  For the foregoing reasons, the Court finds orders in Docket Numbers 531, 681, 942, and 1028 in the Saraland case and Docket Numbers 51 and 45 respectively in Adversary Proceeding Numbers 14-03013 and 14-03015 preclude Plaintiffs' Complaint.

**Collateral Estopppel.**

For collateral estoppel or issue preclusion, Defendants must show Plaintiffs' claims are precluded because the issues have been "actually litigated in an earlier action to a final judgment between the same parties. . . . ."  See B & B Hardware, Inc. v. Hargis Indus., Inc., __ U.S.__, 135 S.Ct. 1293, 1302-03, 191 L.Ed.2d 222 (2015)(explaining the elements of issue preclusion).  The following elements must be shown to invoke issue preclusion:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

CSX Transp., Inc. v. Brotherhood of Maint. of Way Employees, 327

AO 72A
(Rev. 8/82)

F.3d 1309, 1317 (11th Cir. 2003). The Defendants argue the same orders previously discussed in the Saraland case show these same issues have been actually litigated between these parties to a final order. After reviewing the matters, the Court finds the issues Plaintiffs raise in the current Complaint were actually raised and actually litigated by the same parties or their privities, the issues were a critical and necessary part of the prior action and the Plaintiffs had a full and fair opportunity to litigate the issues with the Court considering and denying the matters on the merits. As stated in the res judicata section, the Plaintiffs are bound by the Court's prior orders as they had the notice and opportunity to participate. See generally, In re Bush, 62 F.3d 1319, 1323 (11th Cir. 1995)(finding a default judgment had collateral estoppel effect and defining "actually litigated" as requiring "that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion; and second, that the losing party have had 'a fair opportunity procedurally, substantively and evidentially' to contest the issue."); In re Dixon, 525 B.R. 827, 838 (Bankr. N.D. Ga. 2015)("This requirement asks the court to consider 'whether that party was fully able to raise the same factual or legal issues in

the prior litigation.'"); <u>In re Ragucci</u>, 433 B.R. 889, 896 (Bankr. M.D. Fla. 2010)(collateral estoppel applied to pro se litigant who participated in prior).

For these reasons, the Court finds the current Complaint barred by the doctrine of collateral estoppel by the orders at docket numbers 366, 536, 681, 942, and 1028.

**Failure to State a Claim-Plausibility.**

Defendants also argue the alleged facts when taken as true, still fail to state a claim as they do not rise to the level of plausibility as required by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). Defendants argue the current Complaint is full of mere conclusory statements that the Court need not assume are true and the Complaint lacks details of what property was seized or sold or how such conduct was illegal or unlawful. Defendants also contend the Complaint fails to state what accusations Boudreaux made or how they were wrongful in breach of fiduciary duties. They further argue several claims, such as the commingling of funds, are stated as based upon "information and belief" which Defendants argue the Court does need not to assume the truthfulness of these allegations based upon the Supreme Court case of <u>Twombly</u>. See <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 551-57 (2007)(declining to take as true

AO 72A
(Rev. 8/82)

conclusory allegations "upon information and belief" that the companies had entered a conspiracy without enough facts to back it up); Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013)(declining to take as true the conclusory allegations based "upon information and belief" and determining there were not enough facts to nudge the claim from conceivable to plausible).

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) made applicable to bankruptcy by Fed. R. Bankr. P. 7012. "In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). "To survive a motion to dismiss for failure to state a claim, heightened fact pleading of specifics is not required; instead, a plaintiff must plead only enough facts to state a claim to relief that is plausible on its face." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

AO 72A
(Rev. 8/82)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

Specifically, res judicata may serve as grounds for Rule 12(b)(6) defense when dealing with prior litigation. *Dickeron v. Hambrick*, 2007 WL 4564102, at *1 (N.D. Ga. 2007)(taking judicially noticed facts from previous lawsuit along with the alleged facts of the complaint to rule on a motion to dismiss under 12(b)(6) on res judicata grounds). Also, when considering a 12(b)(6) motion to dismiss, the Court may look at the alleged facts on the face of the complaint along with judicially noticed facts from the previous lawsuit in determining if complaint fails to state a claim under Rule 12(b)(6). *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."). As the Court has found when addressing res judicata and collateral estoppel, this Court has previously addressed these issues and claims and therefore, the Complaint is dismissed for the failure to state a claim. While normally the Court would allow the Plaintiffs to amend their Complaint, in this case the Complaint

is dismissed on other grounds therefore amendment would be futile, as this Court has considered these same issues numerous times. See Marsh v. Butler Cty., 268 F.3d 1014, 1022 (11th Cir. 2001)(a complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery).

**Immunity.**

Defendants assert Boudreaux's actions set forth in the Complaint were taken by Boudreaux pursuant to orders of this Court, giving him absolute immunity from suit and/or his actions were taken within the scope of his duties entitling him to qualified immunity and deference by the Court under the business judgment rule. Conversely, Plaintiffs argue the actions of Boudreaux were ultra vires, outside the scope of and in breach of his duties and therefore are excepted from immunity.

Under Eleventh Circuit precedent, a bankruptcy trustee's actions taken pursuant to court orders enjoy absolute immunity. See Property Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 602-04 (11th Cir. 1985) ("[C]ourt-appointed receivers . . . enjoy judicial immunity for acts within the scope of their authority, and that their authority extends to carrying out faithfully and carefully the orders of the appointing judge.");

AO 72A
(Rev. 8/82)

<u>Boullion v. McClanahan</u>, 639 F.2d 213, 214 (5th Cir. 1981) ("In the instant case the court-appointed trustee was acting under the supervision and subject to the orders of the bankruptcy judge . . . [Because] as an arm of the Court, [he] sought and obtained court approval of his actions, he is entitled to derived immunity."); <u>In re Bryan</u>, 308 B.R. 583, 587 (Bankr. N.D. Ga. 2004)(trustee entitled to absolute immunity in defamation action against trustee where the basis of defamation action was the trustee's complaint to the State Bar of Georgia for unauthorized practice of law was filed in trustee's official capacity as a bankruptcy trustee).

As previously discussed, the Court approved the Trustee's sale of property in the Saraland bankruptcy case[14] and had ordered turnover of various property to Boudreaux, as Saraland's trustee. This Court has previously considered and rejected Mr. Harrell's arguments on these same grounds. These orders entitle Boudreaux to absolute immunity for actions taken in carrying out those duties now complained of by Plaintiffs again. <u>In re Concrete Prods., Inc.</u>, 1990 WL 10631664, at *8 (Bankr. S.D. Ga. Nov. 2, 1990)("To the extent that this Court has

---

[14] Furthermore, relief from stay had been previously granted to two creditors for a portion of this property and these creditors consented to the Trustee's sale.

AO 72A

(Rev. 8/82)

ruled on individual actions of the trustee or ordered that the Chapter 11 continue, the trustee has absolute immunity.")(citing Boullion v. McClanahan, 639 F.2d 213 (5th Cir. 1981)(a court appointed trustee in bankruptcy is an arm of the court, and, having sought and obtained court approval of his actions, was entitled to derivative judicial immunity for those judicially approved acts); In re Cruz, 562 B.R. 812, 818 (Bankr. M.D. Fla. 2016)(holding that a trustee is only liable if the trustee's actions rise to the level of willful and deliberate conduct or gross negligence); In re Solar Fin. Servs., Inc., 255 B.R. 801, 804 (Bankr, S.D. Fla. 2000)("A trustee is not liable in any manner for mistakes in judgment where discretion is allowed."); In re Diplomat Constr., Inc., 481 B.R. 215 (Bankr. N.D. Ga. 2012)(trustee may use his business judgment in determining what offers to pursue, even a lower bid may be best for the bankruptcy estate).

Plaintiffs contend they are not suing Boudreaux for acts done in furtherance of this Court's orders or within his official duties of a bankruptcy trustee, but rather they claim the Complaint is for acts done outside the scope of his official duties. Plaintiffs argue Boudreaux's actions fall under the ultra vires exception to immunity. Plaintiffs cite In re

AO 72A
(Rev. 8/82)

McKenzie, 716 F.3d 404 (6th Cir. 2013) where the Court explained that there is an exception to a bankruptcy trustee's immunity if the acts are ultra vires. McKenzie, 716 F.3d at 414-15. The court defined the act of actual wrongful seizure of property by the trustee as ultra vires and not protected by the immunity doctrine. Id. at 415 (courts have only applied the ultra vires exception to the actual wrongful seizure of property by a trustee or receiver). However, in this case, the Court has heard these same complaints numerous times and contemporaneously with many of the sales and these allegations were rejected. Plaintiffs cannot now reassert these claims and start anew with the same claims claiming court-approved actions are ultra vires.

Furthermore, as previously discussed, Mr. Harrell and Paradise Farms each have a chapter 7 trustee whose job it is to collect property belonging respectfully to Mr. Harrell's or Paradise Farms' bankruptcy estates. The Chapter 7 trustee in Mr. Harrell's and in Paradise Farms' cases has not alleged any wrongful seizure of property by Boudreaux, and in fact has appeared and supported Boudreaux's actions. In addition, Saraland has a successor chapter 7 trustee who has reviewed the claim and not found any merit to the allegations and abandoned the claim.

The Court's prior orders and the conclusory nature of the statements in the current Complaint regarding purported non-estate items being seized are insufficient to overcome the presumption of immunity and record in this case.  For these reasons, the Court finds the ultra vires exception inapplicable in this case and the Complaint fails to state a claim.  See In re McKenzie, 716 F.3d at 415 (there is a presumption that actions taken in a trustee's official capacity are immune unless facts demonstrating otherwise were alleged at the outset).

**Federal Tort Claims Act.**

Alternatively, Boudreaux and Liberty argue the adversary proceeding must be dismissed because Plaintiffs have failed to comply with the Federal Torts Claim Act prior to filing the Complaint against Boudreaux.  They argue because Boudreaux is an agent of the United States for purposes of immunity, he is entitled to the benefits of the Federal Tort Claims Act ("FTCA"). Conversely, Plaintiffs argue Boudreaux is being sued in his capacity as a trustee who has acted outside the scope of his duties and not against the United States under 28 U.S.C. §2672 and therefore the FTCA does not apply.

The FTCA waives sovereign immunity of the United States for claims against the United States for monetary damages from

torts committed by "any employee of the Government while acting within the scope of his office or employment, if a private person, would be liable under the like circumstances." 28 U.S.C. §2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). The FTCA requires that a plaintiff exhaust administrative remedies by presenting the claim to the appropriate federal agency and having the agency render a decision on that claim. See 28 U.S.C. §2675(a); see also 28 C.F.R. §14.2.

"In order to impose liability upon the United States, it must be shown that the alleged wrongdoer, if a civilian, is an employee of the United States, and that the negligent act was committed in the scope of his office or employment." Fed. Tort Claims Act Proceedings, 8 AMJUR TRIALS 635, §9, Louis G. Davidson American Jurisprudence Trials. Both 11 U.S.C. §322 and Bankruptcy Rule 2010 distinguish between the "United States trustee" and a person selected to serve as "trustee." See 11 U.S.C. §322; Fed. R. Bankr. P. 2010. Boudreaux and Liberty Mutual's Motions to Dismiss and briefs fail to articulate or provide any case law on how Boudreaux is an employee or agent of the United States for purposes of the FTCA and therefore at this

stage, the motion to dismiss is denied as to the assertion that the Plaintiffs have failed to comply with the FTCA.

**Statute of Limitations.**

Also, alternatively, Defendants assert the Complaint is barred by the statute of limitations of four years under O.C.G.A. §9-3-31 for injuries done to personalty.  See O.C.G.A. §9-3-31("[A]ctions for injuries to personalty shall be brought within four years after the right of action accrues).  In response to the Motions to Dismiss, Plaintiffs assert the Complaint was filed within the two-year time frame contemplated by 11 U.S.C. §322(d) and therefore is timely.  Adversary Proceeding No. 18-03002, Dckt. No. 28, p. 11.

The Complaint states that Mr. Harrell knew of the alleged conduct giving rise to his Complaint by approximately May 31, 2013.  Dckt. No. 1, ¶18.  This adversary proceeding was filed April 4, 2018, more than four years from May 31, 2013.  The statute of limitations has run as to Boudreaux, personally; however, Plaintiffs' Complaint also is brought pursuant to 11 U.S.C. §322(d) which states that "a proceeding on the <u>trustee's bond</u> may not be commenced after two years after the date on which such trustee was discharged."  11 U.S.C. §322(d)(emphasis added). Boudreaux resigned as the trustee and a notice of his removal as

trustee was filed by the UST on December 27, 2016.  Dckt. No. 1115.  Therefore, the Complaint on the trustee's bond was filed within the two years allowed by 11 U.S.C. §322(d).

Courts are split as to whether the action under 11 U.S.C. §322(d) against a surety may proceed when the underlying state statute of limitation would bar a suit against the trustee, personally.  Compare In re Louis Rosenberg Auto Parts, Inc., 209 B.R. 668, 673 (Bankr. W.D. Pa. 1997)(looking to state law statute of limitations to determine if suit on trustee's bond is barred because 11 U.S.C. §322(d) is silent as to whether a surety can be discharged by the running of the limitations period for an underlying action against the trustee); with In re Schooler, 725 F.3d 498, 506-07 (5th Cir. 2013)(stating 11 U.S.C. §322 clearly recognizes two distinct forms of trustee liability – personal liability and liability on the bond and §322(d) sets a two year statute of limitations on any claim on the bond, not an outer limit); Oles Grain Co. v. Safeco Ins. Co, 221 B.R. 371, 373 (N.D. Tex. 1997)(finding 11 U.S.C. §322(d) is a statute of limitations rather than of repose, and provided exclusive period within which action on bond could be brought); In re Armstrong, 245 B.R. 123 (Bankr. D. Neb. 1999)("The claim asserted by the plaintiffs is inherently a federal claim arising under federal law and therefore

AO 72A

(Rev. 8/82)

is subject only to the applicable federal statute of limitations.").

Notwithstanding, the split "[i]t is clear, however, that section 322(d) applies only to suits on the trustee's bond; it does not provide a 'statute of limitations for proceeding against a trustee personally.'" 3 Collier On Bankruptcy, ¶322.05 (16th ed. 2018)(citing In re Smith, 400 B.R. 370, 380 (Bankr. E.D.N.Y. 2009)); In re Schooler, 725 F.3d at 506-07 (§322(d) applies to suits on a trustee's bond not against trustee personally).

> This Court is of the opinion that Congress intended to create a statute of limitations for actions on a bankruptcy trustee's bond that was to be the statute of limitations for such actions. Congress established the bond requirement and the procedures for bringing actions on such bonds, and in passing 11 U.S.C. §322(d), it established the limitations period for such proceedings. According to the legislative history, section 322(d) "fixes a two year statute of limitations on any action on a trustee's bond." S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787; H.R. Rep. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963. There is no indication that Congress intended to set merely an outer limit, within which states might give parties less time to bring actions on a trustee's bond.

Oles Grain Co., 221 B.R. at 375.

After considering the matter, the Court agrees with the Fifth Circuit's interpretation and finds the statute of limitations has expired as to claims against Boudreaux,

individually, but not as to suits on the trustee's bond. Furthermore, even if the Court looked to Georgia law, a surety may be sued where the statute of limitations has run against the principal as such are jointly and severally liable. <u>See Harris v. Black</u>, 85 S.E. 742 (Ga. 1915).''); <u>Reid v. Flippen</u>, 47 Ga. 273 (Ga. 1872)(same); <u>Fidelity-Phenix Ins., Co. v. Mauldin</u>, 179 S.E.2d 525, 527 (Ga. Ct. App. 1970); <u>Escambia Chem. Corp. v. Rocker</u>, 184 S.E.2d 31, 36 (Ga. Ct. App. 1971).

**Mr. Harrell's and Paradise Farm's Standing.**

Defendants assert the current Complaint should be dismissed as to Mr. Harrell and Paradise Farms because they are both in their own chapter 7 bankruptcy cases and cannot be heard to complain about the Boudreaux's actions in Saraland.

They also assert Paradise Farms is a defunct corporation because it was dissolved on December 31, 2015 and therefore the two-year period under O.C.G.A. §14-2-1410[15] during

---

[15] O.C.G.A. §14-2-1410 states:

> The dissolution of a corporation in any manner, except by a decree of the superior court when the court has supervised the liquidation of the assets and business of the corporation as provided in Code Sections 14-2-1430 through 14-2-1433, shall not take away or impair any remedy available to such corporation, its directors, officers, or shareholders for any right or claim existing prior to such dissolution if action or other proceeding

AO 72A
(Rev. 8/82)

which Paradise Farms may sue has expired. Plaintiffs concede Paradise Farms was administratively dissolved on December 31, 2015 but contend this lawsuit is part of its winding up of affairs pursuant to O.C.G.A. §14-2-1405.[16]

Under O.C.G.A. §14-2-1410, the two-year survival period

---

thereon is pending on the date of such dissolution or is commenced within two years after the date of such dissolution. Any such action or proceeding by the corporation may be prosecuted by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right, or claim.

16 O.C.G.A. §14-2-1405 states:

A corporation that has filed a notice of intent to dissolve continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

(1) Collecting its assets;

(2) Disposing of its properties that will not be distributed in kind to its shareholders;

(3) Discharging or making provision for discharging its liabilities;

(4) Distributing its remaining property among its shareholders according to their interests; and

(5) Doing every other act necessary to wind up and liquidate its business and affairs.

under which Paradise Farms could wind up its business and could sue and be sued has expired, therefore, Paradise Farms cannot file a lawsuit. See Deere & Co. v. JPS Dev., 592 S.E.2d 175 (Ga. Ct. App. 2003)(corporate survival statute required dismissal of suit where corporate plaintiff had been dissolved for more than 2 years); GC Quality Lubricants, Inc. v. Doherty, Duggan & Rouse Insurors, 697 S.E.2d 871 (Ga. Ct. App. 2010)(if suit was filed after the two year survival period a later reinstatement does not extend out or revive the action).

Furthermore, as previously discussed, Paradise Farms has a chapter 7 trustee who has the right to sue and avoid any improper post-petition transfers of property of the estate if property of Paradise Farms was improperly transferred or seized. See 11 U.S.C. §549; see also In re Liberty Trust Co., 130 B.R. 467 (W.D. Tex. May 3, 1991)(defunct chapter 7 corporate debtor is unable to exercise a trustee's duties or assert right to causes of action).

Furthermore, Mr. Harrell, is the sole shareholder of Paradise Farms. See In re Paradise Farms, Inc., Chap. 7 Case No. 12-30111, Dckt. No. 1, at 26, 30, Dckt. No. 48, p. 8, ¶22. He also is in a chapter 7 bankruptcy case, with a trustee. His trustee also has the right to sue and recover for the bankruptcy

estate any improperly transferred or seized property of the estate. There is no evidence that the chapter 7 trustee has abandoned these causes of action to Mr. Harrell or of a surplus, or that the transfer involved property that was exempt. See 11 U.S.C. §704; In re Adam Furniture Indus., Inc., 191 B.R. 249 (Bankr. S.D. Ga. 1996)(only chapter 7 trustee has standing to avoid transfers under 11 U.S.C. §549). Also, as previously discussed, this trustee has not supported these allegations.

The fact that the Complaint is brought in the name of the United States for the Use of Plaintiffs does not change this result. Under Federal Rule of Bankruptcy Procedure 2010, the action is brought by "any party in interest" and is brought not by the United States, rather "it is an action brought by a party in interest in the name of the United States." In re Armstrong, 245 B.R. 123, 126 (Bankr. D. Neb. 1999).

For these reasons, the Court finds both Mr. Harrell and Paradise Farms lack standing to bring this suit, but again reach the merits as appropriate under Rule 12(b)(6).

**Boudreaux's resignation as a panel trustee in the Southern District of Georgia.**

Finally, a new item raised in the Complaint is Boudreaux's December 2016 resignation as a panel trustee in the Southern District of Georgia as a result of his misdeeds and

malfeasance in the Mohr case.  There is no dispute Boudreaux's conduct in Mohr was inappropriate and addressed.  See In re Todd Boudreaux, Miscellaneous Proceeding No. 117-mc-00009-JRH. However, there were no allegations in the Mohr disciplinary matter related to, or involving Saraland, Paradise Farms, or Mr. Harrell. The same Assistant UST in the current matter also unveiled and prosecuted the Mohr matters.  This Assistant UST was diligent in investigating and pursuing these Mohr allegations which arose in 2016.  At the time the Mohr allegations occurred, the Assistant UST was well aware of the allegations Mr. Harrell has been asserting since 2013.  Throughout the Saraland bankruptcy case, this Assistant UST has repeatedly updated the Court that he sees no evidence to support the claims asserted by Mr. Harrell.  In this case, the Plaintiffs' citation of the Mohr matter fails to state a claim and is not grounds to allow the Plaintiffs to raise the same issues previously considered by this Court or raise new issues that could have previously been raised.

For these reasons, Defendants' Motions to Dismiss are:

(i) GRANTED as to the defenses of res judicata, collateral estoppel, failure to state a claim, immunity, and standing;

AO 72A
(Rev. 8/82)

(ii) DENIED as to compliance with Federal Tort Claims Act;

(iii) GRANTED as to the statute of limitations defense regarding Boudreaux, personally; and

(iv) DENIED as to the statute of limitations defense regarding Liberty Mutual and the trustee's bond.

For these reasons, the adversary proceeding is ORDERED DISMISSED.